IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

HOMEROOM, INC., et al.,

Plaintiffs,

v.

Case No. 2:23-cv-02209-HLT-GEB

SHAWNEE, KANSAS, CITY OF, et al.,

Defendants.

## MEMORANDUM AND ORDER

This case involves a local ordinance that limits the number of unrelated people who can live together in Shawnee, Kansas. Plaintiffs are a private citizen and a property management company. Their principal contention is that the ordinance violates their constitutional rights to intimate association and equal protection. Defendants move to dismiss. Doc. 12. They contend the Supreme Court resolved this issue in 1974. The Court agrees that the Supreme Court resolved similar due process and equal protection challenges in *Village of Belle Terre v. Boraas*, 416 U.S. 1 (1974), and that the Supreme Court's holding is binding on this Court. The differences identified by Plaintiffs do not meaningfully distinguish *Belle Terre* and instead elevate form over substance. The Court thus grants the motion and dismisses the constitutional challenges. The Court also declines supplemental jurisdiction over the remaining state-law claim and dismisses it without prejudice.

**I.    BACKGROUND**[1]

Defendant City of Shawnee adopted Ordinance No. 3419 in April 2022. Doc. 1 at ¶ 24. The ordinance defines "Co-Living Group" as "a group of four (4) or more unrelated persons age

---

[1] The following facts are taken from the well-pleaded allegations in the complaint. Doc. 1.

eighteen (18) or older living together in a dwelling unit, provided that if any one (1) of the adult persons is unrelated to another adult person in the group, the entire group shall be classified as unrelated." *Id.* ¶ 26.[2] "Related persons" means "(A) Persons related by blood, marriage, adoption, or guardianship; or (B) A person having legal custody of a minor or the designee of a parent or other person having legal custody of a minor." *Id.* ¶ 27. The ordinance prohibits Co-Living Groups in every residential-use zone in the City. *Id.* ¶ 25 It does not limit occupancy of related individuals. *See id.* ¶ 4. It applies regardless of whether the residence is rented or owner-occupied. *Id.* ¶ 34. The City has established a pattern and practice of enforcing the ordinance. *Id.* ¶ 29.

Plaintiff Val French is a private citizen. *Id.* ¶ 9. When the City adopted the ordinance, French lived in a house she owned with her husband, their two adult sons, and the girlfriend of one of the sons. *Id.* ¶ 36. Each member of the household contributed to the household's "responsibilities, burdens, and joys of residential domestic life." *Id.* ¶ 38. This arrangement was rendered unlawful under the ordinance because the girlfriend was not related to anyone in the household by blood, marriage, or adoption. *Id.* ¶ 37. Thus, two of the residents of French's house— her son and his girlfriend—have moved out. *Id.* ¶ 39. French cannot invite them to move back or rent out the spare room to another tenant because of the ordinance. *Id.* ¶ 40.

Plaintiff HomeRoom, Inc. is a property management startup company. *Id.* ¶ 10. It helps connect property owners to residential renters and facilitates low-cost housing searches for those looking for co-living situations. *Id.* ¶ 19. The ordinance was in part directed at HomeRoom's business model. *Id.* ¶ 28. HomeRoom manages two residential properties in Shawnee that are owned by investors. *Id.* ¶ 30. HomeRoom is the "master tenant" for each property. *Id.* HomeRoom

---

[2] The ordinance is attached to the complaint as an exhibit, Doc. 1-1, and Defendants agree it is properly considered in deciding the motion to dismiss, Doc. 13 at 2 n.1.

used to sublet the homes to unrelated roommates. *Id.* ¶ 31. But HomeRoom was forced to evict those tenants after the City enacted the ordinance, and it now sublets the properties to blood-related families. *Id* ¶¶ 32-33.

Both French and HomeRoom claim to be injured by the ordinance. *Id.* ¶ 11. French contends the ordinance prohibits her from inviting others to live in her home. *Id.* ¶ 16. HomeRoom contends the ordinance makes it impossible to operate its business in the City. *Id.* French and HomeRoom have sued the City, City Manager Doug Gerber, and the City's primary Code Enforcement Officer Kevin Messick. *Id.* ¶¶ 21-23. Gerber and Messick are sued in their official capacities. *Id.* ¶¶ 22-23.

French and HomeRoom assert three claims. First, they bring a 42 U.S.C. § 1983 claim and argue the ordinance violates substantive due process on its face under the Fourteenth Amendment's right to intimate association and the right to establish a home. *Id.* ¶¶ 41-47. Second, they bring a § 1983 claim facially challenging the ordinance under the Equal Protection clause of the Fourteenth Amendment. *Id.* ¶¶ 48-54. Third, they seek declaratory relief under K.S.A. § 60-1701 for noncompliance with the Kansas Zoning Enabling Act. *Id.* ¶¶ 55-65.

## II.   STANDARD

A complaint survives a Rule 12(b)(6) motion to dismiss by containing "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation and citation omitted). A claim is plausible if it is accompanied by sufficient factual content to allow a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's

3

liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation and citation omitted). Courts undertaking this analysis accept as true all well-pleaded allegations in the complaint but need not accept legal conclusions. *Id.* Likewise, conclusory statements are not entitled to the presumption of truth. *Id.* at 678-79. Dismissal under Rule 12(b)(6) is also appropriate "where an issue of law precludes recovery." *Jones v. Addictive Behav. Change Health Grp., LLC*, 364 F. Supp. 3d 1257, 1265 (D. Kan. 2019).

## III.   ANALYSIS

The principal issue in the motion is whether Plaintiffs state a constitutional claim. But the motion also raises some ancillary issues that the Court must address. Defendants make three specific arguments. First, Defendants contend that the claims against Gerber and Messick are duplicative of the claims against the City. Doc. 13 at 1. Second, Defendants contend the complaint fails to state a constitutional violation. *Id.* Third, Defendants argue the complaint fails to state a claim of non-compliance with Kansas zoning laws. *Id.* The Court agrees on the first two points and declines to reach the third.

### A.   Official Capacity Claims Against Gerber and Messick

Defendants first argue that the official capacity claims against Gerber and Messick are duplicative of the claims against the City. *Id.* at 4-5. Plaintiffs agree to dismiss the claims against Gerber and Messick if the City agrees that any ruling in the case is binding on the officials. Doc. 18 at 1 n.1 ("Plaintiffs name Mr. Gerber and Mr. Messick to ensure that relevant City officials are bound by any eventual ruling and therefore accountable to ensure that the Ordinance is not enforced against Court order."). Defendants do not address this issue in the reply.

The Court finds that the official capacity claims against Gerber and Messick should be dismissed. "[T]he Supreme Court has held that a suit against a municipal official in his official

4

capacity is tantamount to a suit against the municipal entity itself." *Smith v. City of Lawrence, Kan.*, 2020 WL 3452992, at *5 n.8 (D. Kan. 2020). Courts "routinely" dismiss such claims as duplicative or redundant to the claims against the entity defendant. *Id.*; *see also Jones v. Wildgen*, 320 F. Supp. 2d 1116, 1124 (D. Kan. 2004) ("In suits in which a government entity is a party, the Court has previously dismissed official capacity claims against individuals."). The Court also notes that the claims in this case do not distinguish among Defendants. The claims in the complaint refer only to "the City." Doc. 1 at ¶¶ 41-65. Gerber and Messick are only mentioned in the complaint for their job titles and not in relation to any conduct towards Plaintiffs. *See id.* ¶¶ 22-23. It is therefore unclear what constitutional violations Plaintiffs could attribute separately to Gerber or Messick. Accordingly, the Court finds the claims against Gerber and Messick are redundant to the claims asserted against the City and dismisses those claims.

### B.   Constitutional Claims

Plaintiffs assert two 42 U.S.C. § 1983 claims under the Fourteenth Amendment. Both claims present facial challenges. Both claims are based on Plaintiffs' contention that the ordinance infringes on their fundamental rights to intimate association and to establish a home in violation of substantive due process and equal protection. *See* Doc. 18 at 2.[3] These claims are based on the ordinance's limitation on the number of unrelated people who may reside together in a dwelling.

#### 1.   HomeRoom

The Court first addresses these claims asserted by HomeRoom. Defendants move to dismiss the constitutional claims asserted by HomeRoom because it is a corporate entity with no constitutionally protected right of intimate association and because HomeRoom does not have

---

[3]   Although Plaintiffs initially contend that the "right to establish a home" is a separate fundamental right from the right to intimate association, their analysis largely focuses on the latter.

standing to assert constitutional claims on behalf of its sublessees. Doc. 13 at 5. As to the first point, the Court agrees with Defendants. *See Roberts v. U.S. Jaycees*, 468 U.S. 609, 620 (1984) ("[A]n association lacking these qualities—such as a large business enterprise—seems remote from the concerns giving rise to this constitutional protection."); *Moore v. Tolbert*, 490 F. App'x 200, 204 (11th Cir. 2012) ("Corporations do not have 'friends' or 'family members' in any coherent sense. It is unclear, then, how corporations can have intimate associations at all."); *Fiore v. City of Detroit*, 2019 WL 3943055, at *5 (E.D. Mich. 2019) ("Business relationships do not support intimate association claims.").

As to the second point, HomeRoom argues that it is asserting the rights of third parties, i.e., the rights of its would-be unrelated tenants. *See* Doc. 18 at 11-12. But even to the extent HomeRoom could establish Article III standing as to itself, prudential limitations on standing still require the Court to dismiss its constitutional claims based on the rights of others. "[A] party generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004) (internal quotation and citation omitted). A party may be excepted from this rule if it shows that it has a close relationship with the person who holds the right and there is some hindrance on that person's ability to protect her own interest. *Id.* at 129-30. Here, however, HomeRoom only purports to assert the rights of its would-be sublessees. HomeRoom does not identify any authority that would establish this as a close enough relationship to forgo prudential standing limitations.[4] Nor does it

---

4   HomeRoom relies on *Craig v. Boren*, 429 U.S. 190 (1976), but its analysis is not persuasive. In *Craig* a vendor challenged a law that regulated the sale of beer to men under age 21. *Id.* at 192. The Supreme Court found the vendor had standing because the law was aimed at those who sell—not use—beer and she could assert "those concomitant rights of third parties" also affected. *Id.* at 194-95. Here, however, the ordinance is directed at unrelated housemates, not the "master tenant" of the same. While the ordinance may undoubtedly affect HomeRoom's business, something more must be shown before it can assert the right of intimate association of its would-be tenants. *See Kowalski*, 543 U.S. at 130 (noting that outside the limited situations like *Craig*, courts apply the "'close relationship' and 'hindrance' criteria").

give any reason why those individuals are unable to assert their own rights, as French is doing. Certainly, HomeRoom may be able to assert some claim in this situation, but HomeRoom has not shown that it may assert the constitutional claims asserted in this case on behalf of others. Accordingly, the Court dismisses HomeRoom's constitutional claims.

### 2. French

The Court next considers the constitutional claims asserted by French. As already noted, "[t]he Supreme Court has held that it is not arbitrary or unreasonable to limit to two the number of unrelated persons who can live together." *Jones*, 320 F. Supp. 2d at 1131. In *Belle Terre*, the Supreme Court considered an ordinance that restricted land use to single-family dwellings, with family meaning "one or more persons related by blood, adoption, or marriage, living and cooking together as a single housekeeping unit, exclusive of household servants." 416 U.S. at 2. The ordinance limited the number of unrelated people living together to two. *Id.* The Supreme Court detailed various cases addressing zoning ordinances and noted a degree of deference is generally owed to governing bodies on zoning decisions. *Id.* at 2-6. Although ordinances based on suspect classifications like race would "immediately be suspect," the ordinance in question "involve[d] no procedural disparity inflicted on some but not on others" and involved no fundamental rights guaranteed by the Constitution. *Id.* at 6-8. The Supreme Court thus found that the ordinance should be upheld if it was reasonable, was not arbitrary, and bore a rational relationship to a permissible state objective. *Id.* at 8. In other words, the Supreme Court applied rational basis scrutiny. It then concluded that "[a] quiet place where yards are wide, people few, and motor vehicles restricted are legitimate guidelines in a land-use project addressed to family needs," and that limiting the number of unrelated people to two was a proper exercise of legislative discretion. *Id.* at 8-9. The Supreme Court deemed the ordinance constitutional.

*Belle Terre* has long been cited as binding authority on this issue in federal court. *Jones*, 320 F. Supp. 2d at 1131-35; *Doe v. City of Butler, Pa.*, 892 F.2d 315, 319-23 (3d Cir. 1989) (explaining the Supreme Court's different treatment of ordinances targeting related versus unrelated residents and noting that the latter is evaluated under rational basis scrutiny); *Fed. Hill Cap., LLC v. City of Providence*, 227 A.3d 980, 991 (R.I. 2020) ("In light of the fact that Federal Hill Capital has failed to provide any convincing authority for the notion that a right to live anywhere with anyone exists, coupled with the fact that *Village of Belle Terre* rejects such a notion, and that the general idea flies in the face of the purpose of zoning as a concept in and of itself . . . we are not persuaded that there exists any fundamental right under the facts of this case.");[5] *Citizens For Fair Hous. v. City of E. Lansing*, 2001 WL 682491, at *2 (Mich. Ct. App. 2001) ("The right to live with one's family is constitutionally protected . . . but the right to live with any number of individuals who are not one's 'family' is not." (citing *Belle Terre*)); *see also* Rigel C. Oliveri, *Single-Family Zoning, Intimate Association, and the Right to Choose Household Companions*, 67 Fla. L. Rev. 1401, 1414 (2015) (noting that the issue currently "is settled as a matter of federal law"); Katia Brener, *Belle Terre and Single-Family Home Ordinances: Judicial Perceptions of Local Government and the Presumption of Validity*, 74 N.Y.U. L. Rev. 447, 453-54 (1999) ("Because the ordinance in *Belle Terre* restricted merely the number of unrelated persons who could live together, the *Belle Terre* decision remains good law and is controlling in federal cases.").

Plaintiffs argue that *Belle Terre* "does not have binding effect over this suit" because it did not consider the right of intimate association. Doc. 18 at 7. Plaintiffs are correct that the Supreme Court in *Belle Terre* did not specifically name the substantive due process right of intimate

---

[5] *Federal Hill Capital* considered an ordinance limiting the number of college students who could live together under the Rhode Island state constitution, but it noted that the rights under the state and federal constitutions were coterminous. *Fed. Hill. Cap.*, 227 A.3d at 988.

8

association.[6] But this argument elevates form over substance. In *Belle Terre*, the Supreme Court considered the plaintiffs' arguments that the ordinance improperly considered whether residents of houses were married or unmarried and that the ordinance "reeks with an animosity to unmarried couples who live together." *Belle Terre*, 416 U.S. at 7-8. The Supreme Court concluded that the "ordinance places no ban on other forms of association, for a 'family' may, so far as the ordinance is concerned, entertain whomever it likes." *Id.* at 9. The Supreme Court's analysis touches on the same substantive due process issues raised here. And although Plaintiffs argue that "subsequent jurisprudence has greatly undermined [*Belle Terre*'s] force," Doc. 18 at 6, none of the cases cited directly address the issue at hand. *See Fed. Hill. Cap.*, 227 A.3d at 989-91 (noting that *Belle Terre* had largely settled this issue and finding no grounds to deviate from it). Plaintiffs have a right to argue for a change in the law, but *Belle Terre* remains good law and is binding authority this Court must follow. *See United States v. Doby*, 2019 WL 5825064, at *1 (D. Kan. 2019) (explaining that this Court is required to followed binding authority from the Tenth Circuit and the Supreme Court).

Plaintiffs also rely heavily on *Fair Housing Council of San Fernando Valley v. Roommate.com, LLC*. 666 F.3d 1216 (9th Cir. 2012). The issue there was whether the Fair Housing Act ("FHA") restricted the ability to select roommates using a questionnaire that inquired about sex, sexual orientation, and familial status. *Id.* at 1218-20. The Ninth Circuit declined to read the FHA to extend to shared living units—and thus prevent individuals from screening potential

---

[6] *Belle Terre* considered the ordinance in the context of various constitutional rights and considerations, including that it interfered with the right to travel, the right to express social preferences, the right of privacy, and the right of association. *Belle Terre*, 416 U.S. at 7-8. But it did not explicitly distinguish between the right of association protected by the First Amendment versus the Fourteenth Amendment. *See Trujillo v. Bd. of Cnty. Comm'rs of Santa Fe Cnty.*, 768 F.2d 1186, 1188 (10th Cir. 1985) (explaining the distinction between "freedom of expressive association in the First Amendment" and "freedom of intimate association as 'an intrinsic element of personal liberty'" (quoting *Roberts*, 468 U.S. at 620))). *Belle Terre* also considered the ordinance under the Equal Protection clause. *Belle Terre*, 416 U.S. at 1. Both parties in this case generally equate the analysis under the Equal Protection clause with the analysis under substantive due process. Doc. 13 at 10-11; Doc. 18 at 2 n.2. Given that, it would be difficult to extract *Belle Terre* from the analysis here simply because it did not expressly address the right to intimate association.

roommates for certain characteristics—because doing so would "raise[] substantial constitutional concerns" and would potentially be a "serious invasion of privacy, autonomy and security." *Id.* at 1221-22. The court instead adopted a "narrower construction that excludes roommate selection from the reach of the FHA" to avoid a constitutional conflict with the FHA. *Id.* at 1222. The Ninth Circuit did note the important personal interests in selecting roommates. But the issue in *Roommate.com* (whether the FHA should be read to interfere with relationships inside a home) was different than the issue here and in *Belle Terre* (whether municipalities can limit unrelated people living in a residence under zoning authority). The Ninth Circuit did not discuss *Belle Terre*, and, as noted above, *Belle Terre* is binding on this Court.

In sum, the Court finds that the ordinance does not violate substantive due process or the Equal Protection clause based on the authority of *Belle Terre*. The Court grants the motion to dismiss French's constitutional claims.[7]

### C.   State Claims

Lastly, Plaintiffs seek declaratory relief for noncompliance with the Kansas Zoning Enabling Act. They contend the ordinance exceeds the authority granted to municipal governments regarding the adoption of zoning regulations. Doc. 1 at ¶¶ 55-65. The stated basis for jurisdiction over this claim is supplemental jurisdiction under 28 U.S.C. § 1367. *Id.* ¶ 14. That statute states that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction . . . ." 28 U.S.C. § 1367(a). But a court may also decline supplemental jurisdiction if the issue is a novel question of state law or if the court has dismissed

---

[7]   Even if HomeRoom had standing to assert the constitutional rights at issue, dismissal of those claims would be proper for the same reasons discussed above. Likewise, even if Gerber and Messick were properly named, the claims against them would still be dismissed.

all claims over which it has original jurisdiction. *Id.* § 1367(c); *see also Nielander v. Bd. of Cnty. Comm'rs of Cnty. of Republic, Kan.*, 582 F.3d 1155, 1172 (10th Cir. 2009). Courts have discretion to decide whether to exercise supplemental jurisdiction after considering such factors as "comity, convenience, economy, and fairness." *Birdwell v. Glanz*, 790 F. App'x 962, 963-64 (10th Cir. 2020). "When the federal claims disappear early in the litigation, a federal court should generally decline to exercise supplemental jurisdiction." *Id.* at 964.

Here, the Court has dismissed the federal constitutional claims against Defendants. The litigation is in the very early stages. Indeed, the magistrate judge has not yet convened the initial planning and scheduling conference. *See* Doc. 21 (deferring scheduling until after resolution of motion to dismiss). The remaining claim is a matter of state law regarding interpretation of the Kansas Zoning Enabling Act, which is an issue uniquely situated for resolution by a state court. Accordingly, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state-law claim and dismisses that claim without prejudice for lack of subject-matter jurisdiction.

## IV. CONCLUSION

THE COURT THEREFORE ORDERS that Defendants' Motion to Dismiss (Doc. 12) is GRANTED. The Court dismisses the constitutional claims and dismisses without prejudice the state-law claim.

IT IS SO ORDERED.

Dated: September 12, 2023                    /s/ *Holly L. Teeter*
                                             HOLLY L. TEETER
                                             UNITED STATES DISTRICT JUDGE